# In the United States Court of Federal Claims

No. 18-1902 C
(Filed: September 9, 2022)

* * * * * * * * * * * * * * * * *
**CARL ROBERT CARSON, JR.,**

        Plaintiff,

   v.

**THE UNITED STATES,**

        Defendant.

* * * * * * * * * * * * * * * * *

*Roger J. Marzulla*, with whom were *Nancie G. Marzulla* and *Cindy Lopez*, Marzulla Law LLC, all of Washington, D.C., for Plaintiffs, and *Ira M. Lechner*, of counsel.

*Joseph Alan Pixley*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., for Defendant, and *Kendall Rocio*, Staff Attorney, Department of Veterans Affairs Office of General Counsel, of Washington, D.C., of counsel.

## OPINION AND ORDER

On December 11, 2018, Plaintiff, Carl R. Carson, Jr., filed a complaint in this Court seeking retroactive weekend premium pay he claims that he and other similarly situated Veterans Administration police officers are entitled to for weekend hours worked between January 11, 2004, and July 13, 2014. After the close of discovery, Plaintiff moved for summary judgment on liability. In response, the government moved to dismiss for lack of subject matter jurisdiction all claims that accrued prior to December 11, 2012; for summary judgment on such claims to the extent the Court determines they were timely filed; and for summary judgment on Plaintiff's claims that accrued on or after December 11, 2012. At oral argument, the government conceded its liability for claims that accrued on or after December 11, 2012.

For the reasons that follow, Plaintiff's motion for partial summary judgment is granted and the government's motion to dismiss and cross-motion for summary judgment are denied.

## BACKGROUND

In 1986, Plaintiff began a career as a police officer at the Department of Veterans Affairs ("VA"). ECF No. 34-1. He served as a police office at the VA for 34 years until his retirement in August 2020. *Id*. From 2002 until his retirement, Plaintiff was a supervisory police officer.

ECF No. 34-5 ¶¶ 4–5.  At the VA, police officers, like other occupations, are classified using General Schedule ("GS") occupational series.  *Id*.  Plaintiff was classified under the occupational series GS-0083-05 Police Officer for his entire career.[1]  *See* ECF No. 34 ("Pl.'s Partial Summ. J. Mot."); ECF No. 37 ("Gov.'s Partial Mot. to Dismiss").

This litigation centers around Congress's December 2003 amendment to 38 U.S.C. § 7454(b), which added the following text: "(3) Employees appointed under section 7408 of this title shall be entitled to additional pay on the same basis as provided for nurses in section 7453(c) of this title."  Veterans Health Care, Capital Asset, and Business Improvement Act Business Improvement Act of 2003, § 303, Pub. L. No. 108–170, 117 Stat. 2058 (codified at 38 U.S.C. § 7454).  This language was further amended in 2010 to its current form:

> (3) Employees appointed under section 7408 of this title performing service on a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay in addition to the rate of basic pay provided such employees for each hour of service on such tour at a rate equal to 25 percent of such employee's hourly rate of basic pay.

Caregivers and Veterans Omnibus Health Services Act of 2010, § 601, Pub. L. No. 111–163, 124 Stat. 1171 (codified at 38 U.S.C. § 7454).  For purposes of this litigation, the 2010 amendment has no effect on Plaintiff's entitlement to compensation.

After enactment, the VA interpreted section 7454(b)(3) to mean that only employees in occupations appointed pursuant to section 7408 that provide direct patient-care services or services incident to direct patient care fell under its coverage and thus were entitled to weekend premium pay.  *See* ECF No. 34-8 at 3.  As a result of the VA's interpretation, the American Federation of Government Employees ("AFGE") initiated a national grievance against the VA to expand the eligible occupations entitled to weekend premium pay under section 7454(b)(3).  *Id.*  The grievance went to arbitration, and the arbitrator—in decisions dated February 16, 2005, and May 30, 2007—ordered the VA to reevaluate its determinations regarding which occupational series are covered by section 7454(b)(3).  ECF No. 34-8 at 21; ECF No. 34-9 at 20.

After quite some delay, in 2014, in response to these arbitration decisions, the VA issued Human Resources Management Letter No. 05-14-06, titled "Additional Occupations Eligible for Title 38 Weekend Premium Pay" ("2014 HRML").  ECF No. 34-2.  Specifically, the 2014

---

[1] GS-0083-05, the occupational series for police officers,

> covers positions the primary duties of which are the performance or supervision of law enforcement work in the preservation of the peace; the prevention, detection, and investigation of crimes; the arrest or apprehension of violators; and the provision of assistance to citizens in emergency situations, including the protection of civil rights.

Off. of Pers. Mgmt., *Handbook of Occupational Groups and Families*, at 3 (Dec. 2018), https://www.opm.gov/policy-data-oversight/classification-qualifications/classifying-general-schedule-positions/occupationalhandbook.pdf.

HRML listed additional occupational series the VA determined were eligible to receive weekend premium pay:

> Based on an arbitration between VA and American Federation of Government Employees (AFGE), additional occupations have been determined eligible to receive weekend premium pay under the authority of title 38 U.S.C. § 7454 effective January 11, 2004. In addition, certain occupations have been determined ineligible to receive weekend premium pay under the authority of title 38 U.S.C. § 7454.

*Id.* at 1. Among the occupational series listed in the 2014 HRML as eligible to receive premium weekend pay was Police Officer GS-0083-05, the occupational series that covered Plaintiff. *Id.* at Attachment A. The 2014 HRML stated eligible employees would receive retroactive weekend premium pay from January 11, 2004, through July 13, 2014. *Id.* at 1–2.

On August 3, 2017, the VA updated Handbook 5007/51 ("2017 Handbook") to reflect the action taken in the 2014 HRML. Specifically, the 2017 Handbook stated that,

> [e]ffective January 11, 2004, additional positions were determined to be eligible for weekend premium pay. A full-time, part-time or intermittent VHA employee in a position (Occupation, Series and Title) listed in appendix V-B, who performs service on a tour, any part of which is between midnight Friday and midnight Sunday, will receive premium pay for each hour of service on such tour. Premium pay for service under this paragraph is equal to 25 percent of the employee's basic hourly rate of pay.

ECF No. 34-3. Plaintiff's occupation code, "0083 05 Police Officer" was listed in the 2017 Handbook as among the "positions eligible for weekend premium pay," just as it had been in the 2014 HRML. *Id*. at Appendix B.

However, on January 18, 2018, the VA Office of Human Resources Management issued a bulletin ("2018 Bulletin") that purported to remove GS supervisors, like Plaintiff, from being eligible to receive retroactive weekend premium pay from 2004 to 2014. The 2018 Bulletin stated that

> [a]t or around the same time that prospective payments began for employees in eligible occupations, VA extended prospective eligibility to non-bargaining unit employees in official GS Supervisory positions in eligible occupations. GS Supervisors are not covered by the terms of the AFGE settlement agreement because they are not bargaining unit employees, and they are not entitled to retroactive payments prior to July 13, 2014.

ECF No. 37-3.

On December 11, 2018, Plaintiff filed a complaint in this Court, alleging that he and similarly situated employees are entitled to retroactive weekend premium pay between January

11, 2004, and July 13, 2014, based on the 2014 HRML and the 2017 Handbook, which expressly listed his occupational series as entitled to receive such pay. *See* ECF No. 1 ("Compl."). Following discovery, Plaintiff filed a motion for partial summary judgment on April 30, 2021. The government filed, on June 15, 2021, a cross-motion for summary judgment and a motion to dismiss for lack of subject matter jurisdiction, arguing, *inter alia*, the vast majority of Plaintiff's retroactive weekend premium pay claims were time-barred.

## DISCUSSION

### A. Legal Standard

#### 1. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Subject matter jurisdiction is a threshold issue that must be determined at the outset of a case." *King v. United States*, 81 Fed. Cl. 766, 768 (2008) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). In considering a motion to dismiss for lack of subject matter jurisdiction, the Court must accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to that party. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1347 (Fed. Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If a challenge is raised to subject matter jurisdiction, the plaintiff has the burden of proving that the Court has jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The Tucker Act's six-year statute of limitations period is "jurisdictional" in nature, *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 134 (2008), and "cannot be waived or extended by equitable considerations," *Young v. United States,* 529 F.3d 1380, 1384 n.1 (Fed. Cir. 2008). Thus, failure to bring a claim pursuant to the Tucker Act within six years of its accrual will result in dismissal for lack of subject matter jurisdiction. A Tucker Act claim "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.,* when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting *Nager Elec. Co. v. United States,* 368 F.2d 847, 851 (Ct. Cl. 1966)).

#### 2. Motion for Summary Judgment

In addition to the government's motion to dismiss, the parties have cross-moved for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). Summary judgment is appropriate in cases in which there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. RCFC 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if it "may reasonably be resolved in favor of either party." *Id.* at 250. The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The nonmoving party bears the burden of

showing that there are genuine issues of material fact. *Id.* at 324. The Court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

**B. Analysis**

Plaintiff's claims are best analyzed by dividing them into two sets: those claims that arise from pay periods that ended on or after December 11, 2012; and those claims that arise from pay periods that ended before that date. With regard to claims that arise from pay periods that ended on or after December 11, 2012, the government concedes that they were timely filed and, as explained below, concedes that it is liable for such claims. As to Plaintiff's claims that are based on pay periods that ended before December 11, 2012, the government contends that these claims also accrued prior to December 11, 2012, and are, therefore, untimely. Plaintiff disagrees with the government's contentions, asserting for two independent reasons that these claims did not accrue until July 11, 2014, at the earliest, when the VA issued Human Resources Management Letter No. 05-14-06.[2] First, he claims that 38 U.S.C. § 7454(b)(3) required administrative implementation by the VA in order to bring him within its coverage and thus his claims did not accrue until that implementation occurred in the form of the 2014 HRML issued on July 11, 2014. Second, he alternatively claims that the 2014 HRML and the 2017 VA Handbook are money-mandating sources of law that entitle him to weekend premium pay and both were issued within six years of the filing of this action. In addition, Plaintiff claims that the 2014 HRML and the 2017 VA Handbook entitle him to compensation; therefore, the Court should enter summary judgment in his favor.

For the reasons that follow, the Court finds: (1) Plaintiff is entitled to summary judgment on liability with regard to his claims that arise from pay periods that ended on or after December 11, 2012; (2) Plaintiff's claims that arise from pay periods that ended prior to December 11, 2012, were timely filed; and (3) Plaintiff is entitled to summary judgment with regard to such claims.

### 1. Claims Based on Pay Periods that Ended on or After December 11, 2012

The government acknowledged in its motion to dismiss that the Court has jurisdiction to decide Plaintiff's claims for weekend premium pay from December 11, 2012 (the date that is six years before filing suit) until July 13, 2014 (when he began receiving weekend premium pay).[3] Notwithstanding this acknowledgment regarding jurisdiction, in its motion for summary

---

[2] In addition, Plaintiff argues that even if the Court were to determine that 38 U.S.C. § 7454(b)(3) alone entitled him to retroactive premium pay, his claims are nonetheless timely under the acknowledgement doctrine. As the Court finds that Plaintiff's claims are timely for other reasons, it will not address as a matter of prudence whether the acknowledgment doctrine still applies in suits brought pursuant to the Tucker Act.

[3] The government's motion to dismiss incorrectly states that the complaint in this case was filed on December 18, 2018.

judgment the government contended that even though the Court had jurisdiction to hear this set of claims, the government was nonetheless entitled to summary judgment on these claims. However, at oral argument, the government conceded that Plaintiff is entitled to retroactive weekend premium pay for the period from December 18, 2012, to July 13, 2014. Transcript of Oral Argument at 25–26, *Carson v. United States*, 18-1902 (Fed. Cl. Oct. 21, 2021).[4]

The government's concession was dictated as a matter of logic from its position on why claims arising from pay periods prior to December 11, 2012, should be dismissed as untimely. The government's contention regarding pre-December 11, 2012, claims is that Plaintiff was entitled to weekend premium pay as a result of the enactment of 38 U.S.C. § 7454(b)(3) alone without any further administrative action of the agency; therefore, his claims accrued at the end of each pay period for which he worked weekend hours and did not receive premium pay. However, if section 7454(b)(3) alone entitled Plaintiff to weekend premium pay, then the government's argument that he was not entitled to retroactive premium pay based on a "VA issued a bulletin clarifying that General Schedule (GS) supervisors are not entitled to retroactive payments for weekend premium pay prior to July 13, 2014" cannot be correct, because a VA issued bulletin obviously cannot trump a statutory entitlement. Accordingly, the government conceded liability as to Plaintiff's claims that arise from pay periods that ended on or after December 11, 2012. As explained below, the Court finds that the government is liable for all of Plaintiff's retroactive weekend premium pay claims and thus does not see any issue with the government's concession. Therefore, Plaintiff is entitled to summary judgment as to all claims that arise from pay periods that ended on or after December 11, 2012.

### 2. Claims Based on Pay Periods that Ended Prior to December 11, 2012

Plaintiff filed his complaint on December 11, 2018. Accordingly, under the Tucker Act's six-year statute of limitations, in order for his retroactive pay claims that are based on pay periods that ended prior to December 11, 2012, to be within the Court's jurisdiction, they would have had to accrue on or after that date. The government asserts in this litigation that Plaintiff's entitlement to retroactive weekend premium pay is derived solely from 38 U.S.C. § 7454(b)(3) without the need for any further administrative action by the VA; therefore, each claim for backpay accrued after each pay period starting on January 11, 2004, for which Plaintiff worked eligible hours but did not receive weekend premium pay. Conversely, Plaintiff asserts that his entitlement to premium pay is not solely derived from section 7454(b)(3). Rather, Plaintiff argues that his entitlement to premium pay under section 7454(b)(3) required further administrative implementation by the VA, which was accomplished by the issuance of the 2014 HRML and the 2017 VA Handbook. Alternatively, Plaintiff argues that even if section

---

[4] In the following exchange with the Court, the government conceded that because the statute entitled Plaintiff to weekend premium pay, a regulation could not take away that entitlement:

> THE COURT: So, then, the United States concedes that for a year and a half he has a back pay claim.
> GOVERNMENT COUNSEL: Yes, to be consistent, yes.
> THE COURT: So you're waiving your opposition to the motion for summary judgment?
> GOVERNMENT COUNSEL: For that limited period for a GS supervisor -- supervisory police officer for Mr. Carson, that is correct for that approximately 18-month period [that] is timely.

7454(b)(3) in and of itself entitled him to weekend premium pay (and thus his claims began accruing at the end of each pay period after January 11, 2004), this is not fatal to his case because the 2014 HRML and the 2017 VA Handbook are themselves money-mandating sources of law that entitle him to weekend premium pay.  Thus, under either argument, Plaintiff contends that his claims did not accrue until July 11, 2014, at the earliest, and the 2014 HRML and the 2017 Handbook entitle him to retroactive weekend premium pay and consequently summary judgment on his claims for such retroactive pay.

If Plaintiff's entitlement to weekend premium pay rested solely on section 7454(b)(3), the Court would concur with the government that Plaintiff's claims that are based on pay periods that ended prior to December 11, 2012, are untimely.  However, the Court does not concur with the government's contention that it is section 7454(b)(3) alone that entitles Plaintiff to weekend premium pay.  Instead, as explained below, there are two reasons that 2014 HRML and the 2017 VA Handbook are, in fact, what entitle Plaintiff to the relief he seeks.  Accordingly, for those reasons, Plaintiff's pre-December 11, 2012, related claims are timely, and Plaintiff is entitled to summary judgment on those claims.

      **a. The 2014 HRML and the 2017 VA Handbook Triggered Plaintiff's Entitlement to Weekend Premium Pay**

Based on the VA's own interpretation of 38 U.S.C. § 7454(b)(3), in combination with its interpretation of 38 U.S.C. § 7408, enactment of section 7454(b)(3) alone was not sufficient to trigger an employee's entitlement to weekend premium pay; rather, additional administrative action by the VA was required to determine which employees were eligible for premium pay.  This prerequisite administrative action did not occur until July 11, 2014; therefore, Plaintiff's claims could not have accrued until 2014 at the earliest, well within the Tucker Act's six-year statute of limitations.

Recall that section 7454(b)(3) provides that "[e]mployees appointed under section 7408 of this title" shall receive weekend premium pay.  The first question, thus, is whether Plaintiff, a supervisory police officer, is an employee appointed under section 7408.  The answer to this question, according to the VA, is "yes."  But it is not a simple "yes."  Instead, according to the VA, in order to know if an employee is appointed under section 7408 (at least for purposes of section 7454(b)(3)), the VA must make a determination that such employee is a health care worker.  *See* ECF No. 34-2 (stating that the congressional amendments to 38 U.S.C. § 7454 "authorize[] payment of weekend premium pay to health care workers in VHA").  In the 2014 HRML, the VA determined that health care workers who qualify for section 7454(b)(3) weekend premium pay are those VHA employees in occupational series "that have been determined to provide direct patient-care services or services incident to direct patient care within the Veterans Health Administration (VHA)."  ECF No. at 34-2 at 1.

Yet, in this litigation, the government asserts that section 7454(b)(3) alone entitled Plaintiff to weekend premium pay and that no administrative action by the VA was necessary to determine Plaintiff's eligibility.  Although this assertion (assuming it is correct) would be helpful to the government's defense of the claims alleged by Plaintiff in this litigation, it is completely contradictory to how the VA has treated (and, as far as the Court is aware, still treats) entitlement

7

to weekend premium pay pursuant to section 7454(b)(3). In fact, as best the Court can tell, this argument was invented out of whole cloth for this litigation. The government's own motion for summary judgment bears this out. *See generally* ECF No. 37 at 4–8 (explaining the history of how and why the VA determined certain occupational series were eligible for section 7454(b)(3) premium pay). As does its supplemental, post-argument brief, which explains that only certain employees appointed pursuant to section 7408 are entitled to weekend premium pay pursuant to section 7454(b)(3). ECF No. 43 at 5–7. Either the 2014 HRML, the 2017 Handbook, and any other VA documents that deny weekend premium pay to employees in certain occupational series appointed pursuant to section 7408 are contrary to law (and thus the VA has been unlawfully failing to provide weekend premium pay to employees in dozens of occupational series appointed pursuant to section 7408 for nearly two decades) or the position the government is taking in this litigation is simply incorrect.

As far as the Court is aware, in no place, other than this litigation, has the government taken the position that all employees appointed under section 7408 are entitled to weekend premium pay under section 7454(b)(3).[5] That is to say, the government's consistent position outside of this litigation appears to be that a further determination that employees in an occupational series appointed pursuant to section 7408 "provide direct patient-care services or services incident to direct patient care" is needed for those employees to be entitled to section 7454(b)(3) premium pay. This is how the government can state in its supplemental brief that all of the positions listed in the 2014 HRML are appointed under section 7408, ECF No. 43 at 5–6, and yet maintain that not all of the positions listed are entitled to section 7454(b)(3) premium pay.

In this litigation, however, the government asks the Court to ignore these inconvenient facts and instead rule that section 7454(b)(3) alone entitled Plaintiff to weekend premium pay and that, therefore, his weekend premium pay claims began accruing each pay period after January 11, 2004, in which he worked eligible hours but for which he did not receive premium pay. This the Court will not do. The Court finds that Plaintiff was not entitled to weekend premium pay until the VA in the 2014 HRML determined that Police Officer GS-0083-05 is an occupational series that "provide[s] direct patient-care services or services incident to direct patient care within the Veterans Health Administration."

---

[5] The government, of course, does not say this directly, but it is the import of the government's position here. The government asserts that Plaintiff was entitled to weekend premium pay by virtue of the passage of section 7454(b)(3) alone, without any administrative action by the VA necessary to determine his eligibility. The only way that can be the case is if *all* employees appointed under section 7408 are entitled to weekend premium pay and have been so since the first pay period after the enactment of section 7454(b)(3) in 2003. But that has never been the government's position. *See, e.g.*, ECF No. 34-2 (listing occupational series appointed pursuant to section 7408 that are ineligible for weekend premium pay). The government's consistent interpretation of section 7454(b)(3) is that only employees appointed pursuant to section 7408 who provide direct patient-care services or services incident to direct patient care within the Veterans Health Administration are entitled to weekend premium pay. This is why in the 2014 HRML and the 2017 Handbook in addition to listing those occupational series that are eligible for premium pay, ineligible occupational series are listed as well. If all employees appointed pursuant to section 7408 were entitled to premium pay, there would be no need to list occupational series that are ineligible.

What is more, the Court finds that the government, having successfully argued a contrary position in a previous legal proceeding, is judicially estopped from arguing that section 7454(b)(3) alone entitled Plaintiff to weekend premium pay.  "As this Court previously has noted, the doctrine of judicial estoppel is intended to prevent a litigant from playing fast and loose with the courts by assuming contrary positions in legal proceedings."  *WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 277 (2021) (citing cases) (internal quotations and alterations omitted).  Stated differently, courts have "uniformly recognized" that the purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal citations and quotations omitted).  Accordingly, under the doctrine of judicial estoppel, if "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the [opposing] party . . . ."  *Davis v. Wakelee*, 156 U.S. 680, 689 (1895).  But that is precisely what the government is doing in this litigation.  It is taking a contrary position to the position it successfully took in the AFGE arbitration, and "[i]t is widely held that a position taken in arbitration can give rise to judicial estoppel."  *Speroni S.p.A. v. Perceptron, Inc.*, 12 Fed. App'x 355, 358 n.1 (6th Cir. 2001) (unpublished) (citing *Lydon v. Bos. Sand & Gravel Co.*, 175 F.3d 6, 12–13 (1st Cir. 1999); *Admiral Ins. Co. v. Rushmore*, 70 F.3d 1277 (9th Cir. 1995) (unpublished); *Fewell v. Kozak*, No. 98 C 2924, 1999 WL 966447 (N.D. Ill. Oct. 19, 1999) (unpublished); *Am. Life Ins. Co. v. Parra*, 63 F. Supp. 2d 480 (D. Del. 1999); *Dapelo v. Banco Nacional de Mexico*, No. 91 CIV 0093, 1993 WL 159943 (S.D.N.Y. May 11, 1993) (unpublished); *Arcor, Inc. v. Textron, Inc.*, No. 88 C 1188, 1990 WL 84548 (N.D. Ill. June 11, 1990); *In re Cohn–Phillips, Ltd.*, 193 B.R. 757 (Bkrtcy. E.D. Va. 1996).

The Supreme Court has identified several factors that typically inform the decision of whether to apply judicial estoppel in a given case: 1) "a party's later position must be clearly inconsistent with its earlier position"; 2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and 3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *New Hampshire*, 532 U.S. at 750–51 (internal quotations and citations omitted).  These factors all weigh in favor of estopping the government from arguing in this litigation that section 7454(b)(3) alone, without any further administrative action by the VA, entitled Plaintiff to premium pay.

First, the government's position in the AFGE arbitration regarding the entitlement to weekend premium pay under section 7454(b)(3) is clearly inconsistent with the position it takes in this litigation.  In that arbitration, the union took the position that all VHA employees who work eligible weekend hours are entitled to weekend premium pay.  ECF No. 37-2 ("It is AFGE-NVAC's position that the language in section 303 of P.L. 108-170 is clear and that a reading of its plain language reveals that all Title 5 VHA employees who work on Saturdays are eligible for Saturday Premium Pay.").[6]  Conversely, the government took the position that only those

---

[6] Apparently, the union eventually conceded the point and agreed that the law only applied to those occupations that provide direct patient care services or services incident thereto.  ECF No. 34-8 at

employees who provide direct patient-care services or services incident to direct patient care are eligible for weekend premium pay under section 7454(b)(3) and that a VA determination was needed to decide which occupational series qualified for such pay. ECF No. 34-8 at 16 ("The agency's position throughout has been that the new law applies only to GS employees who provide patient care."). In this litigation, however, the government takes the position that enactment of section 7454(b)(3) *alone* was sufficient to entitle Plaintiff to premium pay with no further administrative action needed to determine which occupational series provide direct or indirect patient care. These positions are facially inconsistent.

Second, although the government did not "win" the arbitration, the arbitrator did accept at least two of the government's positions in the arbitration that are relevant to this litigation: 1) that not all employees appointed under section 7408 are entitled to weekend premium pay, and 2) that the VA needed to determine which occupational series provide direct patient-care services or services incident to direct patient care and thus are eligible for weekend premium pay. *See generally* ECF No. 34-8; *see also* ECF No. 34-9. The arbitrator then ordered the VA to make the relevant determinations, which the VA did, albeit nine years later. The covered occupational series determinations are encapsulated in the 2014 HRML. Clearly, the VA was successful in its argument. *See* ECF No. 34-8 at 16 ("Next to be answered is the two part question of whether sub-sections 7454 (a) and (b) are limited to (1) those who provide patient-care services, and (2) those who are also GS employees. *The agency's position throughout has been that the new law applies only to GS employees who provide patient care. It has persuasively demonstrated that the entire history of Title 38 and its amendments are irrevocably tied to patient care.*") (emphasis added). The Court will not permit the government to reverse course in this litigation and offer an inconsistent argument to suit its present purposes.

Third, the government will derive an unfair advantage or impose an unfair detriment on Plaintiff if the Court does not estop the government from arguing that section 7454(b)(3) alone entitled Plaintiff to premium pay. The government took a more limited view of section 7454(b)(3) premium pay eligibility in the AFGE arbitration, a position that surely saved it money. It cannot now take a more expansive view of section 7454(b)(3) in order to save itself from having to pay Plaintiff's claims. This change in positions clearly works to Plaintiff's detriment. Under the government's successful arbitration theory, Plaintiff was ineligible for weekend premium until the VA determined which occupational series were eligible for premium pay. However, under the government's litigation position before this Court, Plaintiff was always eligible for premium pay with no eligibility determination by the VA needed, meaning the vast majority of his claims long ago accrued and are now time-barred. This is just the type of strategic inconsistency judicial estoppel is designed to prevent.

---

16 ("[A]t the [arbitration] hearing counsel for the union conceded that VA had properly interpreted the new Saturday premium pay to apply only to employees in occupations providing direct patient-care services or services incident thereto, but argued that VA had too narrowly tailored its list of such occupations.").

10

### b. Alternatively, the 2014 HRML and the 2017 VA Handbook Are Money-Mandating Sources of Law that Entitle Plaintiff to Retroactive Weekend Premium Pay

In the alternative, even if Plaintiff's entitlement to weekend premium pay was originally derived solely from 38 U.S.C. § 7454(b)(3), and thus no further action from the VA was required to make Plaintiff eligible for weekend premium pay, Plaintiff nonetheless has a claim for retroactive weekend premium based on the 2014 HRML and the 2017 VA Handbook, because they are money-mandating sources of law that created a new entitlement to retroactive weekend premium pay. In order to be entitled to relief under the Tucker Act for a claim based on the 2014 HRML and the 2017 VA Handbook, Plaintiff must demonstrate that: (1) the letter and handbook were an enforceable "regulation of an executive department," 28 U.S.C. § 1491(a)(1); and (2) the provisions of the 2014 HRML and the 2017 Handbook can be fairly interpreted to create a substantive right to monetary compensation from the United States.

With regard to whether the 2014 HRML and the 2017 VA Handbook are enforceable "regulations," the Federal Circuit in *Hamlet v. United States* outlined a four-part test for when an internal agency document, like a manual or handbook "is a regulation entitled to the force and effect of law." 63 F.3d 1097, 1105 (Fed. Cir. 1995). According to the circuit, an internal agency document can be given binding effect, "regardless of whether [it] . . . was published or promulgated under the standards set out in the Administrative Procedure Act (APA)," if:

> (1) the promulgating agency was vested with the authority to create such a regulation; (2) the promulgating agency conformed to all procedural requirements, if any, in promulgating the regulation; (3) the promulgating agency intended the provision to establish a binding rule; and (4) the provision does not contravene a statute.

*Hamlet*, 63 F.3d at 1105.

First, it is indisputable the VA was vested with the administrative authority to promulgate regulations to distribute weekend premium pay to its employees: "[t]he Secretary shall prescribe by regulation standards for compensation and payment under this section." 38 U.S.C. § 7454(c) Both the 2014 HRML and the 2017 VA Handbook cite section 7454 as the authority for determining weekend premium pay eligibility. ECF No. 34-2 ("[A]dditional occupations have been determined eligible to receive weekend premium pay under the authority of title 38 U.S.C. § 7454 effective January 11, 2004."); ECF 34-3 ("Additional positions eligible for title 38 Weekend Premium."). That the VA used an HR management letter and a handbook instead of formal regulations to exercise this authority is addressed under the next factor in the *Hamlet* test.

Second, there were no procedural requirements to which the VA needed to conform. Because the entitlement to weekend premium pay involves "a matter relating to agency management or personnel," the VA was not obligated to abide by the typical notice-and-comment rule-making procedures of the APA. *See* 5 U.S.C. § 553(a)(2). In fact, the VA "has not issued a comprehensive set of regulations implementing the VHA personnel provisions in title 38. Instead, [the VA] has set forth its interpretation of the title 38 personnel provisions in

11

the form of manuals, directives, and handbooks . . . ." *James v. Von Zemenszky*, 284 F.3d 1310, 1318–19 (Fed. Cir. 2002).  It is seemingly commonplace for the VA to prescribe employee pay and benefits through handbooks and HR management letters.  ECF No. 34-5 ¶ 3 ("Veterans Affairs does not use formal regulations to prescribe pay and benefits for its employees.  Instead, Veterans Affairs publishes a series of online handbooks stating the pay and benefits to which various categories of Veterans Affairs employees are entitled.  These handbooks prescribe mandatory VHA procedures and/or operational requirements.") (quotations omitted); *id.* ¶ 5 ("HR Management Letters have the same force and effect as handbook provisions.  HR Management Letters instruct human resources personnel and notify Veterans Affairs employees what pay and benefits employees are entitled to receive.").

Third, it is clear from the language used and the VA's actions that the VA intended both the 2014 HRML and the 2017 Handbook to be binding.  In assessing whether the VA intended the letter and handbook to be binding, *Hamlet* further instructs the Court to examine: "(a) whether the language of the provision is mandatory or advisory; (b) whether the provision is 'substantive' or 'interpretive'; (c) the context in which the provision was promulgated; and (d) any other extrinsic evidence of intent."  *Hamlet*, 63 F.3d at 1105.  The text of both the 2014 HRML and the 2017 Handbook illustrate that the VA intended to create both a "mandatory" and "substantive" obligation to provide retroactive weekend premium pay to eligible employees. *See, e.g.*, ECF No. 34-2 ("All employees will receive weekend premium pay retroactively from January 11, 2004."); ECF No. 34-3 ("Effective January 11, 2004, additional positions were determined to be eligible for weekend premium pay . . . will receive premium pay for each hour of service on such tour.").  Furthermore, the VA specified in both the 2014 HRML and the 2017 Handbook precisely which occupational series are eligible for premium pay.  The Court cannot read such exacting language as "interpretive," "precatory," or "procedural"; rather the VA unambiguously expressed its intent to bind itself to paying retroactively employees in the listed occupational series.  *But see LAX Elecs., Inc. v. United States*, 154 Fed. Cl. 113, 118–19 (2021), *aff'd*, No. 2021-2374, 2022 WL 2035616 (Fed. Cir. June 7, 2022) (finding an agency manual not binding when provisions use "precatory" language and are procedural in nature (i.e., "should"; "removal might be warranted")).  Moreover, a binding arbitration was the "the context in which the [the 2014 HRML and the 2017 Handbook were] promulgated."  An agency provision borne from an arbitrator's decision tips the scale in favor of the agency intending that provision to be "mandatory," "substantiative," and binding rather than merely advisory.  Moreover, and perhaps most importantly, the VA demonstrated it considered the provisions of the 2014 HRML and the 2017 Handbook to be binding on itself: it actually paid employees determined to be eligible for weekend premium per the 2014 HRML and the 2017 Handbook.  In fact, in response to interrogatories, the government admitted to paying retroactive weekend premium pay to tens of thousands of VA employees, including supervisors, between January 2004 to July 2014.  ECF Nos. 38-3, 38-4.

Finally, the relevant provisions in the 2014 HRML and the 2017 Handbook do not contravene any federal statute.  Indeed, they are in line with the text and purpose of section 7454(b)(3)—providing weekend premium pay to more VA employees—and 5 U.S.C. § 5596, the Backpay Act.

12

Having established that the 2014 HRML and the relevant provisions of the 2017 Handbook are entitled to the force and effect of law, the next question is whether they are money-mandating sources of law.  A regulation is money-mandating "if . . . it can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003) (citations omitted).  Clearly, the relevant wording of both the management letter and the handbook can fairly be interpreted as mandating compensation, for example:

- This Human Resources Management Letter (HRML) *expands the entitlement of title 38 weekend premium pay* to additional title 5 occupations that have been determined to provide direct patient-care services or services incident to direct patient care within the Veterans Health Administration (VHA), also referred to as VHA health care workers.

- Based on an arbitration between VA and American Federation of Government Employees (AFGE), *additional occupations have been determined eligible to receive weekend premium pay under the authority of title 38 U.S.C. § 7454 effective January 11, 2004*.

- *All employees will receive weekend premium pay retroactively from January 11, 2004*, to the prospective start date based on the category of employee.

- The additional occupations *now eligible to receive weekend premium pay* are identified in Attachment A of this HRML.

- *A full-time, part-time or intermittent VHA employee in an occupation listed in Attachment A* who performs service on a tour, any part of which is between midnight Friday and midnight Sunday *will receive premium pay for each hour of service on such tour*.

- Human Resources Offices are responsible for providing each individual currently employed in these occupations with a notice regarding this change in entitlement. . . .  *All employees must be notified of this change no later than 30 days from the date of this HRML.*

ECF No. 34-2.  Similarly, the 2017 Handbook uses money-mandating language:

- *Effective January 11, 2004, additional positions were determined to be eligible for weekend premium pay*.  A full-time, part-time or intermittent VHA employee in a position (Occupation, Series and Title) listed in appendix V-B, who performs service on a tour, any part of which is between midnight Friday and midnight Sunday, *will receive premium pay for each hour of service on such tour*.  Premium pay for service under this paragraph is equal to 25 percent of the employee's basic hourly rate of pay.

ECF No. 34-3.

In sum, the relevant provisions of both the 2014 HRML and the 2017 Handbook are clearly money-mandating sources of law that entitle Plaintiff to retroactive premium pay.

### c. The 2018 Bulletin Does Not Relieve the Government of its Obligation to Provide Retroactive Weekend Premium Pay

The Government's final argument in opposition to Plaintiff's claims is that, regardless of the 2014 HRML and the 2017 Handbook, in 2018 the government clarified who was eligible for retroactive weekend premium pay in a manner that made "GS Supervisors," like Plaintiff ineligible. According to the government, "[o]n January 18, 2018, the VA Office of Human Resources Management (OHRM) issued a bulletin entitled, 'Clarification of Weekend Premium Pay Entitlements,' that excluded non-bargaining unit employees, and supervisors, from receiving retroactive premium pay." ECF No. 37 at 8. The 2018 Bulletin asserts that: "GS Supervisors are not covered by the terms of the AFGE settlement agreement because they are not bargaining unit employees, and they are not entitled to retroactive payments prior to July 13, 2014." ECF No. 37-3 at 1–2. From this 2018 Bulletin, the government argues that Plaintiff is not in any event entitled to retroactive weekend premium pay because he was a "GS Supervisor." The government further claims that the 2018 Bulletin is entitled to deference and that the bulletin represents the "VA's consistent regulatory interpretation since January 18, 2018, . . . that GS supervisors are excluded from receiving retroactive weekend premium pay." ECF No. 37 at 14–15. The government's argument is without merit.

First, the government is incorrect that the 2018 Bulletin is entitled to deference. Deference to agency decision-making, whether *Chevron*,[7] *Auer*,[8] or otherwise, only comes into play in instances in which an ambiguity exists. *See Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994) ("[Courts] must defer to [an agency's] interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.") (internal quotations and citation omitted). The language in the 2014 HRML and the 2017 Handbook regarding who was entitled to retroactive premium pay, however, does not contain any ambiguity. In fact, the plain language of those documents is crystal clear: "*All employees* will receive weekend premium pay retroactively from January 11, 2004." ECF No. 34-2 (emphasis added); *see also id*. ("*A full-time, part-time or intermittent VHA employee in an occupation listed in Attachment A* who performs service on a tour, any part of which is between midnight Friday and midnight Sunday *will receive premium pay for each hour of service on such tour*.") (emphasis added). Therefore, as no ambiguity exists, the 2018 Bulletin "clarifying" the entitlement to retroactive premium pay is not entitled to deference. *See, e.g.*, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("If uncertainty does not exist, there is no plausible reason for deference.").

Second, the fact is that the 2014 HRML and the 2017 Handbook applied to all employees in the occupational series determined by the VA to provide direct or indirect patient care services and nothing in the text of the 2014 HRML and the 2017 Handbook excludes supervisors from their retroactive coverage. Rather, the text of the 2014 HRML states that "[a]ll employees" will receive retroactive weekend premium pay and the 2017 Handbook provides the same. ECF No.

---

[7] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).
[8] *Auer v. Robbins*, 519 U.S. 452 (1997).

34-2 ("All employees will receive weekend premium pay retroactively from January 11, 2004 . . . ."); ECF No. 34-3 ("Effective January 11, 2004, additional positions were determined to be eligible for weekend premium pay.  A full-time, part-time or intermittent VHA employee in a position (Occupation, Series and Title) listed in appendix V-B, who performs service on a tour, any part of which is between midnight Friday and midnight Sunday, will receive premium pay for each hour of service on such tour."). Plaintiff's occupational series, GS-0083-05, is listed as eligible to receive weekend premium pay.  Nowhere in the 2014 HRML or the 2017 Handbook are supervisors excluded from receiving weekend premium payments.

The supposed clarification contained in the 2018 Bulletin is that "GS Supervisors are not covered by the terms of the AFGE settlement agreement because they are not bargaining unit employees"; therefore, according to the agency, "they are not entitled to retroactive payments prior to July 13, 2014." ECF No. 37-3.  The agency's supposed intent *ab initio* to exclude non-bargaining unit employees, including supervisors, from the entitlement to retroactive payments is belied by the all-encompassing language of the 2014 HRML, the 2017 Handbook, and the agency's own actions.  By the government's own admission in response to interrogatories, thousands of VA employees, including GS Supervisors, who were not members of the AFGE were given retroactive weekend premium pay:

- "1,415 GS Supervisors were paid retroactive weekend premium pay, while in a non-supervisory status, for the period beginning midnight Friday and ending midnight Sunday between January 11, 2004, to July 11, 2014."[9]

- "There are 13,028 other [non-AFGE] bargaining unit employees paid to date."

- "There are 8,460 non-union employees paid to date."

- "[T]here are 2,860 wage grade supervisory employees paid to date."

ECF Nos. 38-4 and 34-10.  Simply put, the justification for the 2018 Bulletin's "clarification" does not hold water.

The 2018 Bulletin was not a clarification but rather a change of policy that the agency was not entitled to make without providing Plaintiff with the retroactive weekend premium pay he was entitled to under 2014 HRML and the 2017 Handbook.  *Hudick v. Wilkie*, 755 Fed. App'x 998, 1005-1006 (Fed. Cir. 2018) ("Even when an agency's rules lack the force of law, it may still be compelled to follow them.") (citing *Morton v. Ruiz*, 415 U.S. 199, 234–35 (1974)

---

[9] The fact that these GS Supervisors only received retroactive weekend premium pay for hours worked "while in a non-supervisory status" is irrelevant to 2018 Bulletin's proffered reason for why GS Supervisors are not entitled to premium pay.  The Bulletin does not say that supervisors were not entitled to retroactive pay because they are supervisors; it says they did not receive premium pay because they were not AFGE bargaining unit employees.  A supervisor is no more an AFGE bargaining unit employee when he or she is working non-supervisory hours than he or she is when working supervisory hours.  The 2018 Bulletin does not justify the "clarification" based on supervisory status (such that whether hours worked were supervisory or non-supervisory is relevant), it justifies the "clarification" based on membership in the AFGE.

(the Bureau of Indian Affairs could not deny benefits to an applicant based on unpublished criteria where its internal guidance manual required such criteria to be published)); *see also Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (concluding that that, although "rules in the [Coast Guard] Personnel Manual may not qualify as binding regulations for all purposes," they should be treated as binding where the Coast Guard Board of Military Records viewed them as such). Moreover, even if the agency's original decision to provide retroactive pay to all employees in the listed occupational categories was more generous than was required by the AFGE arbitration, once it made the decision to pay all covered employees it had to stick with that decision. *See Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959); *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all . . . .").

In sum, the 2018 Bulletin's supposed "clarification" does not relieve the government of its obligation to provide Plaintiff retroactive weekend premium pay under the terms of the 2014 HRML and the 2017 Handbook.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is **DENIED**; the government's cross-motion for summary judgment is **DENIED**; and Plaintiff's motion for summary judgment is **GRANTED**. Furthermore, on or before **September 30, 2022**, the parties **SHALL** file a joint status report proposing a schedule for further proceedings in this case.

**IT IS SO ORDERED.**

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge