# In the United States Court of Federal Claims

No. 18-1902 C

(Filed: May 9, 2024)

```
* * * * * * * * * * * * * * * * *   *
                                    *
CARL ROBERT CARSON, JR.,            *
                                    *
                                    *
                  Plaintiff,        *
                                    *
      v.                            *
                                    *
THE UNITED STATES,                  *
                                    *
                  Defendant.        *
                                    *
* * * * * * * * * * * * * * * * *   *
```

## MEMORANDUM OPINION AND ORDER

**SOMERS,** Judge.

Before the Court is Plaintiff's motion to approve notice to prospective class members. For the reasons that follow, Plaintiff's motion is granted-in-part and denied-in-part.

## BACKGROUND

On December 11, 2018, Plaintiff filed suit on behalf of himself and all similarly situated Department of Veterans Affairs ("VA") supervisory police officers who did not receive weekend premium pay for work they performed between January 11, 2004, and July 13, 2014. ECF No. 1 at 1. On September 9, 2022, the Court denied the government's motion to dismiss Plaintiff's complaint and granted Plaintiff's motion for partial summary judgment. *Carson v. United States*, 161 Fed. Cl. 696, 711 (2022). In granting Plaintiff's motion, the Court found the government liable for back pay for the period from January 11, 2004, through July 13, 2014. *Id.* at 699. Thereafter, the parties endeavored to resolve damages without the need for class certification. ECF No. 48. Those efforts failed, and, on July 31, 2023, Plaintiff moved to certify a class of "all GS-0083-005 Veterans' Affairs police officers who (1) were employed by the Department of Veteran's Affairs (VA) for any period of time between January 11, 2004[,] and July 13, 2014, (2) worked any weekend shift between January 11, 2004[,] and July 13, 2014[,] and (3) were not paid weekend premium pay for those shifts." ECF No. 65 at 1.

On December 20, 2023, the Court certified the class as defined above and instructed the parties as follows:

> In addition, no later than January 19, 2024, Plaintiff shall file a motion seeking the Court's approval of a proposed notice to prospective class members complying with RCFC 23(c)(2)(B). Plaintiff shall include in his filing: the proposed notice, the proposed opt-in notice form, the proposed plan for the distribution of the notice, the proposed opt-in period, including the date by which potential members must opt-in, and the proposed specific method by which the notice will be provided. Plaintiff shall also indicate whether the government consents to the motion. If not, the government shall file a response no later than February 9, 2024, and Plaintiff shall file a reply to any such response by February 19, 2024.

*Carson v. United States*, No. 18-1902, 2023 WL 8812926 at *5 (Fed. Cl. Dec. 20, 2023).

As directed by the Court, Plaintiff filed his proposed notice, proposed opt-in form, and the proposed method and deadline for opting into the class. ECF No. 71. Plaintiff informed the Court that "Counsel for the United States has reviewed this Motion and its attachments and has advised us that he does not object to the content of the proposed notices." *Id.* at 1. The government, however, does object to the proposed procedures. *Id.* Plaintiff's proposed procedures require the VA "to (1) create and maintain a class website and helpline; (2) prepare and mail postcard notices to prospective class members; and (3) provide payment within one month to prospective class members who opt in." *Id.*

Plaintiff's proposed procedure for distributing notice is as follows:

> The VA will mail an abbreviated Postcard Notice to all 1,241 present and former VA employees whom the VA has determined to be due back pay under the Court's liability decision. The Postcard Notice will direct the present or former VA employee to a VA-created and maintained web site where more detailed information can be found, including the online notice to class members. The website will include instructions explaining how prospective class members can opt-in to the class online, and will also let potential class members print an opt-in form to be submitted via U.S. mail

ECF No. 71 at 7–8. Plaintiff argues that it is appropriate to require the VA to do this because "in cases where liability has been established, courts have shifted the costs of providing notice to prospective class members from the plaintiff to the defendant." *Id.* at 8. Because the VA "has maintained employment and contact information for the prospective class members for years and liability against the VA has already been established[,]" Plaintiff argues the Court should shift the cost to the government. *Id.* at 9. In response, the government argues that it is Plaintiff's burden "to mail an approved notice, or distribute notice by another method approved by the Court, to each of the prospective class members, and to bear the cost of this undertaking." ECF No. 74 at 2 (internal citations omitted).

Finally, Plaintiff asserts that once the class opt-in period is over "the VA's payroll system should enable it to pay by direct deposit the back pay and interest to each prospective class member who is currently employed by the agency within one month after it finalizes the proper amount of back pay (plus interest) owed to each individual." ECF No. 71 at 9. Similarly,

Plaintiff contends that "the Department should be able to process and send checks to former employees or their heirs within the same one-month period." *Id.* at 10.

## DISCUSSION

A.  **Legal Standard**

Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC") governs class actions. RCFC 23(c)(2)(B) requires that "the court [] direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Although "there are not rigid rules for providing class notice, the chosen notice must fairly appraise the class members of the [class certification] and the options open to them in connection with the proceeding." *Silver Buckle Mines, Inc. v. United States*, No. 13-476, 2024 WL 659948 at *2 (Fed. Cl. Feb. 16, 2024) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 113-14 (2d Cir. 2005)). Moreover, "[t]o be adequate, the notice must be understandable to the average class member." *Id.*; *see also* RCFC 23(c)(2)(B) ("The notice must clearly and concisely state in plain, easily understood language [the required content]."). In addition, RCFC 23 governs the resolution of a class action, providing that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised *only with the court's approval*." RCFC 23(e) (emphasis added). When a "proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" RCFC 23(e)(2).

B.  **The Court approves the proposed notice and the proposed opt-in notice form**

Pursuant to the Court's previous order, Plaintiff proposed notice, an opt-in notice form, a plan for the distribution of the notice, an opt-in period, including the date by which potential members must opt-in, and a specific method by which the notice will be provided. *See generally* ECF No. 71; *see also* Ex.'s 1–3. As Plaintiff stated, "the parties have agreed on [Plaintiff]'s proposal for the wording of the notice, the use of postcards for abbreviated notice, the use of a website for providing more information, and the process for opting into the class." ECF No. 75 at 1. The Court has independently reviewed the contents of the proposed notice and accompanying documents, and they are approved subject to the changes discussed in subsections C and D of this opinion.

C.  **The Court declines to shift the burden of paying for and managing the notice from Plaintiff to the government**

The Court declines to require the government to assume Plaintiff's burden of managing the notice process. Generally, "a representative plaintiff is expected to bear the cost of notice to the class as part of the 'burden of financing his own suit.'" *Barnes v. United States*, 72 Fed. Cl. 6, 7 (2006) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178–79 (1974)). Even though there ordinarily "'is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant,' the court, in its discretion, may order a defendant to 'perform one of the tasks necessary to send notice, such as identification,' where the defendant can do so with greater efficiency or less expense than the plaintiff." *Id.* at 7–8 (quoting *Oppenheimer*

*Fund, Inc. v. Sanders*, 437 U.S. 340, 350, 354–56 (1978)). However, "courts must not stray too far from the principle underlying [*Eisen*] that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Oppenheimer Fund, Inc.*, 437 U.S. at 359. Plaintiff cites a variety of cases to support his proposition that "in cases where liability has been established, courts have shifted the costs of providing notice to prospective class members from the plaintiff to the defendant." ECF No. 71 at 8 (citing cases). According to Plaintiff, because liability has been established in this case, it is appropriate to require the government to carry the burden of paying for and notifying the prospective class by "establish[ing] a website and helpline for the class action and mail[ing] Postcard Notices to each prospective class member." *Id.*

Despite Plaintiff's urging, there are at least three reasons the Court will not deviate from the general rule that requires a plaintiff to carry the "burden of financing his own suit." *Eisen*, 417 U.S. at 178–79. First, Plaintiff asks the Court not only to require the government to pay for the cost of the notice but also to require the government to manage the process of providing notice to the class. Plaintiff, though, provides no binding precedent to support his position. Plaintiff is correct that "in cases where liability has been established, courts have shifted the *costs* of providing notice to prospective class members from the plaintiff to the defendant." ECF No. 71 at 8 (emphasis added). However, Plaintiff seeks not just to shift cost of notice but rather seeks to require the government to establish a website, mail approved notice postcards, and maintain a helpline to facilitate notice to the prospective class. *Id.* at 6. Plaintiff's request is easily distinguishable from his cited authority. For example, in *Catlett v. Missouri Highway and Transp. Com'n.*, the district court ordered the Missouri Highway Commission to bear the cost of mailing the notices, the cost of publishing the notice in newspapers, and had to "establish a fund in the amount of $300.00 to pay for telephone costs incurred in the process of locating class members. Plaintiff's counsel are to render an itemized accounting for the disbursement from this fund . . . ." 589 F. Supp. 949, 952. (W.D. Mo. 1984). As requested by Plaintiff, the government here would not be merely reimbursing the costs of the notice provisions but rather fronting the costs and the manpower required to provide notice to the prospective class members. Moreover, Plaintiff offers no evidence to support a finding that the government is in a position in which it could do these tasks with "with greater efficiency or less expense than the plaintiff." *Barnes*, 72 Fed. Cl. at 8. Rather, all Plaintiff offers is that the government "has maintained employment and contact information for the prospective class members for years . . . ." ECF No. 71 at 9.

Second, only one of the cases cited by Plaintiff involves transferring costs to the federal government in a suit brought under the Tucker Act. That case, *Barnes v. United States*, is easily distinguishable. In *Barnes*, Judge Allegra required the government to bear the cost of identifying potential class members because "defendant [was] in sole possession of the relevant employment records . . . [and] it [was] uniquely position[ed] to [identify potential class members.]" *Id.* at 9. The government has already identified potential class members and shared that list with Plaintiff and the Court. *See* ECF No. 65-1–9. Thus, unlike the situation in *Barnes*, Plaintiff has the requisite information needed to provide the notice. Moreover, Plaintiff asks the Court to require the government to carry the more substantial burden of creating a website and a helpline, mailing notices to all potential class members, and collecting all the responses to facilitate a settlement. *See generally* ECF No. 71. This is a far cry from the identification required in *Barnes*; it is more akin to requiring the government to do Plaintiff's job for him. Unlike in *Barnes*, Plaintiff has not

4

established that the government is in a position in which it can do these tasks more efficiently than Plaintiff.  Even in *Hartman v. Wick*, in which the district court required the federal government to bear the full expenses of notifying the potential class and undertake the burden of notifying the entire potential class, the class action discrimination claim was brought against an official of the United States Information Agency—not the federal government directly.  678 F. Supp. 312, 329–331 (D.D.C. 1988).  This is the only case cited by Plaintiff in which any substantive burden is shifted from the plaintiff to a federal defendant.  But the Court declines to follow the *Hartman* burden shifting because it is unclear that doing so would result in a more efficient form of notice and settlement.  For instance, if the Court were to shift the burden, it likely would require the government to engage with a contractor to create the website and telephone helpline and distribute the postcard notice.  It is unclear to the Court how requiring the government to engage a contractor, presumably through either a sole source award or a competitive procurement (that would then be potentially subjected to a challenge at the Government Accountability Office or this Court), would be more efficient than Plaintiff and class counsel (both private parties) engaging a contractor to do the same tasks.

Finally, in reply, Plaintiff concludes that "[b]ecause the VA has offered no good reasons it should not—as the liable party—bear the responsibility for the tasks and costs for providing [Plaintiff]' proposed notice, [the motion] should be granted."  ECF No. 75 at 4–5.  This argument turns Plaintiff's requested deviation from the general rule on its head—it is Plaintiff, not the government, who holds the burden to convince the Court to shift the cost.  *See Bakov v. Consolidated World Travel, Inc.*, 68 F.4th 1053, 1059 ("This does not mean that costs must be shifted when liability has been found; the ultimate decision rests in the district court's discretion.").  As the government points out, Plaintiff "seeks to foist the burden and responsibility of managing the tasks of class action notice upon the Government, which is properly his to bear."  ECF No. 74 at 1.  Even if the Plaintiff was correct that the Court could shift both the cost and the actual management of the notice distribution to the government, the choice to do so still lies within the discretion of the Court.  *See Bakov*, 68 F.4th at 1059.  In short, while Plaintiff may have established that the Court *can* shift the cost, he has failed to establish that it *should*.

The Court chooses to exercise its discretion and will apply the general rule.  Therefore, the notice and the proposed procedure must be modified to comport with this decision.  The notice shall no longer list the VA's Mailing Address as it does in Exhibit 2 and Exhibit 3. Plaintiff shall collect these notices and manage the website and helpline.  In keeping this burden with Plaintiff, the Court believes that it will result in "the best notice that is practicable under the circumstances[.]"  RCFC 23(c)(2)(B).

### D.     The Court rejects the payment deadline put forth by Plaintiff

Finally, Plaintiff states that "[b]y July 1, 2024, the Department of Veterans' Affairs will pay each eligible person who has timely opted into the class the amount shown on the list of 1,241 eligible present and former employees, plus interest at the rates shown on the OMB web site."  ECF No. 71 at 6.  The government has not challenged this deadline but the Court rejects imposing such a deadline on the government because this lawsuit is now proceeding as a class action.  As such, RCFC 23 governs the proceedings in this court.  RCFC 23(e) states that "[t]he

claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  Furthermore, "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate[.]"  RCFC 23(e)(2).  As the payment of back pay would bind class members, the Court's rules require it to hold a hearing to determine whether any settlement is fair, reasonable, and adequate.  *Id.*  As such, the Court rejects the temporal requirement that Plaintiff has attempted to place on the payment of back pay and interest.  Once the notification process is complete, the class is identified, and a settlement is proposed, the Court will review the proposed settlement to ensure that it is "fair, reasonable, and adequate[.]"  *Id.*  To do anything else would be inconsistent with the Court's rules.

## CONCLUSION

Plaintiff's Motion to Approve Notice and Related Filings for Prospective Class Members is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The parties shall file a joint status report attaching the provisionally approved notice, subject to the changes outlined above, on or before **May 31, 2024**.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge